**FILED**
**November 10, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In re J.M., M.M., D.M. and W.M.**

**Nos. 20-0958 & 20-0992** (Nicholas Co. 18-JA-128, 18-JA-129,
18-JA-130, 18-JA-131)

**MEMORANDUM DECISION**

In these consolidated appeals, Petitioner Mother P.M. and Petitioner Father E.M. challenge the November 5, 2020, disposition order of the Circuit Court of Nicholas County terminating their parental rights to their children J.M., M.M., D.M., and W.M.[1] The West Virginia Department of Health and Human Resources ("DHHR") and the children's guardian ad litem ("GAL") filed briefs in support of the circuit court's order.[2] Counsel presented oral argument on October 26, 2021.

After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court concludes that the circuit court's disposition order fails to set forth sufficient findings of fact and conclusions of law regarding the children's preferences and the circuit court's basis for termination of parental rights. Accordingly, we vacate the November 5, 2020, disposition order and remand for further proceedings consistent with this decision. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for resolution in a memorandum decision.

**I. Facts and Procedural History**

This case began in August 2018 when the DHHR removed the four children from the home and filed a petition against the parents[3] alleging two separate counts of abuse and neglect. First,

---

[1] These appeals were consolidated for purposes of argument and decision. Because the case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990).

[2] The petitioner mother is represented by Kathleen B. Murphy, Esquire. The petitioner father is represented by Kenneth J. Barnett, Esquire. The DHHR is represented by Patrick Morrisey, Attorney General; Caleb A. Seckman, Assistant Solicitor General; and James "Jake" Wegman, Assistant Attorney General. The GAL is Julia R. Callaghan, Esquire.

[3] The petitioners, who are collectively referred to in this memorandum decision as "the parents," are the adoptive parents/paternal grandparents of these four children. The parental rights of the children's biological parents were terminated several years ago due to drug abuse.

1

the DHHR alleged that during an argument, the teenaged child W.M. jumped out of a moving car driven by the mother. According to the petition, the mother continued to drive away and did not seek medical treatment for W.M., who was injured. W.M. went to school and school personnel called an ambulance for him. Second, the DHHR alleged that the mother and father engaged in domestic violence in the presence of the children. The parents waived a preliminary hearing and, at the adjudicatory hearing in September 2018, stipulated that they had committed domestic violence in the presence of the children. The record on appeal does not specify the nature of this domestic violence. The parents did not stipulate to the charge involving failure to obtain medical treatment for W.M. after he jumped from the car. The circuit court accepted the stipulation and adjudicated the parents as abusive parents based upon the domestic violence charge. The parents requested a post-adjudicatory improvement period.

As part of their review of this matter, the Multidisciplinary Treatment Team ("MDT") was concerned about substance abuse in the home. Although the mother had a valid prescription for hydrocodone to relieve her rheumatoid arthritis pain, one or more of the children stated during interviews that she was buying and selling pills on the street. Accordingly, the MDT recommended that the terms of any case plan and improvement period prohibit the parents from using any alcohol and any drugs for which they did not have a prescription, and the MDT recommended that the mother be required to wean herself off hydrocodone.

The circuit court accepted the MDT's recommendations and granted a ninety-day post-adjudicatory improvement period with terms including, inter alia, that the parents were required to submit to random drug and alcohol screening; remain drug and alcohol free and have no positive drug screens; have no alcohol or prescription medication in the home without a valid and current prescription supported by a well-reasoned medical opinion as to the need for said medication; and the mother was required to wean herself off of hydrocodone.

Thereafter, the circuit court held multiple review hearings and extended the improvement period. At a hearing in June 2019 that was initially scheduled for disposition, the circuit court granted the parents a post-dispositional improvement period. The court also permitted W.M. and M.M. to return to the parents' home to live, where they remained until the final disposition ruling. The other two children were in specialized placements because of troubling behavior and juvenile delinquency.

During the improvement periods, the father had two urinalysis test results that were positive for alcohol as well as a few diluted urine samples. The father admits that he drank some beer and excessive amounts of water to help his one remaining kidney function better, but he denies drinking beer to the point of inebriation and represents that he has now stopped drinking all alcohol. Later in these proceedings, his urine tests were negative for alcohol. All of the father's tests were negative for drugs. The mother had some urine tests that found drugs that would require a prescription, for which she did not have a valid prescription. The mother has not had a prescription for hydrocodone since April 2019, but she tested positive for this drug at various times beginning in January 2020. In May 2020, the mother tested positive for buprenorphine and norbuprenorphine for which she did not have a prescription. In July 2020, she again tested positive for hydrocodone without a prescription.

In July 2020, the GAL filed a motion to set the matter for disposition and to terminate parental rights. She reported that although all four children wished for parental rights to remain intact, it was in their best interests for parental rights to be terminated because the mother was continuing to abuse prescription medication. Also in July 2020, the circuit court received letters from three of the children indicating their wish to live with the parents.

The final disposition hearing was held in August 2020. Among the evidence presented was testimony from Megan Mebane of Q-Labs, who was qualified as an expert in the field of toxicology. She testified to the procedures that laboratory staff used to label and handle specimens submitted for testing. Ms. Mebane explained that laboratory staff placed the mother's urine samples into the testing machines, and Ms. Mebane then reviewed the results and determined what the test results showed. She also testified that the staff who handled the mother's samples were available to testify. Ms. Mebane testified about the mother's positive drugs screens, and she confirmed that no substance other than buprenorphine can cause a positive result for that drug. Thus, even though the mother had a prescription for Tylenol with codeine, Ms. Mebane testified that this would not have given a false positive result for buprenorphine. CPS workers testified that the DHHR was seeking termination of the parents' rights because of, inter alia, the mother's ongoing drug abuse and the father's failure to protect the children from this drug abuse. Although the father did not testify at the disposition hearing, he had previously indicated that he was unaware the mother was abusing drugs. The mother testified and denied that she had consumed buprenorphine or other drugs for which she did not have a prescription. She asserted that she and her husband had successfully completed the terms of their improvement period and wished to have all four children returned.[4] Finally, the two children who were living in the home at the time, W.M. and M.M., testified in camera that they had never seen their mother under the influence of drugs, and they wanted to remain living in the home with their parents. The circuit court initially held its ruling in abeyance, but entered the final disposition order terminating parental rights on November 5, 2020.

In the final disposition order, the circuit court found that in violation of the family case plan, the mother had continued to abuse controlled substances, specifically buprenorphine and norbuprenorphine, in the presence of the two children who were currently residing in the home. The circuit court also found that the father had failed to protect the children in his care because he knew, or should have known, that the mother was abusing controlled substances in the presence of the children. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and the children needed continuity of care and caretakers. The circuit court found no suitable alternative other than

---

[4] There was discussion at the disposition hearing about a hair follicle test performed on the mother, but that test had not looked for the drug buprenorphine. At the conclusion of the disposition hearing, the circuit court ordered a new hair follicle test that would look for buprenorphine and other drugs. According to the parents, the mother's second hair follicle test came back negative for buprenorphine. However, according to the DHHR, this second hair follicle test came back positive for a controlled substance for which the mother did not have a prescription. There is no indication in the record that this second hair follicle test result was submitted to the circuit court for consideration before the disposition order was entered.

3

termination of both parents' parental rights pursuant to West Virginia Code § 49-4-604. The parents now appeal this disposition order to our Court.[5]

## II. Standard of Review

When reviewing a circuit court's order terminating parental rights, we give plenary review to questions of law while findings of fact and conclusions of law regarding whether a child was abused or neglected are examined for clear error:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). With this in mind, we consider the parties' arguments.

## III. Discussion

The mother's appeal focuses on the children's request that parental rights be left intact. The father's appeal raises a multi-issue challenge to the circuit court's reasons for terminating parental rights. We begin our discussion with the mother's appeal.

### A. The children's stated preferences regarding termination of parental rights.

The mother argues that the circuit court erred by disregarding the testimony and wishes of the children. The children had all indicated that they wanted to live at home and did not want their parents' rights to be terminated. Three of the children expressed this opinion in written letters to the circuit court; two of the children testified to this at the disposition hearing; and, according to the GAL, all four children had expressed this preference to her.

---

[5] During the appeal period, the oldest child W.M. reached the age of eighteen and voluntarily returned to the parents' home.

The abuse and neglect disposition statute, West Virginia Code § 49-4-604, provides in relevant part that "[n]otwithstanding any other provision of this article, the *court shall give consideration* to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." *Id.* at § 49-4-604(c)(6)(C) (2020) (emphasis added). Regarding this law, we have held that

> [w]hen determining whether to permanently terminate the parental, custodial and guardianship rights and responsibilities of an abusing parent, West Virginia Code § 49-4-604(b)(6)(C) (2019) [now codified at § 49-4-604(c)(6)(C) (2020)] requires a circuit court to give consideration to the wishes of a child who is fourteen years of age or older or otherwise of an age of discretion as determined by the court. A circuit court is not obligated to comply with the child's wishes, but shall make the termination decision based upon a consideration of the child's best interests. The child's preference is just one factor for the circuit court's consideration.

Syl. Pt. 4, *In re J.A.*, 242 W. Va. 226, 833 S.E.2d 487 (2019). Thus, while a circuit court is not obligated to follow the wishes of a child who is fourteen years old or older or otherwise of an age of discretion, the court must consider those wishes when making a decision regarding termination of parental rights.

At the time of the August 2020 disposition hearing in this case, W.M. was seventeen years old; D.M. was sixteen years old; M.M. was thirteen years old; and J.M. was twelve years old. Thus, two of the children were definitely old enough to have their preferences considered. The two younger children may have been of an age of discretion to express an opinion, but the circuit court did not make any rulings in this regard. Unfortunately, the appellate record and the disposition order are silent as to whether the younger children were of sufficient maturity to express a preference; whether the circuit court considered any of the children's preferences; and, if the court did consider the children's preferences, why the court decided to reject them.

Rule 36(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings (2015) requires a circuit court to make findings of fact and conclusions of law to support a disposition decision. In previous cases, we have vacated and remanded disposition orders to allow circuit courts the opportunity to make findings of fact and conclusions of law regarding the application of West Virginia Code § 49-4-604(b)(6)(C) (2019) [now codified at § 49-4-604(c)(6)(C) (2020)]. For example, in *In re Jessica G.*, 226 W. Va. 17, 697 S.E.2d 53 (2010), a thirteen-year-old girl had a strong bond with her parent and did not wish for parental rights to be terminated. However, the circuit court failed to adequately explain why the child was not "otherwise of an age of discretion" to express an opinion, and the circuit court failed to explain why her wishes were not factored into the court's termination decision. *Id.* at 21-22, 697 S.E.2d at 57-58. This Court vacated and remanded for the circuit court to consider the child's wishes. *Id.* Similarly, in *In re J.A.*, we vacated and remanded when, inter alia, there was no indication that a circuit court had considered the reasons why a child did not wish for parental rights to be terminated. *J.A.*, 242 W. Va. at 238, 833 S.E.2d at 499.

Abiding by this precedent, we vacate the circuit court's November 5, 2020, disposition order with regard to both parents and remand this case to the circuit court for compliance with West Virginia Code § 49-4-604(c)(6)(C) and Rule 36(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings.[6] The circuit court may hold any necessary hearings and, at a minimum, must enter an amended disposition order reflecting its consideration of the wishes of all children who are fourteen years of age or older or otherwise of an age of discretion to express an opinion on the termination of parental rights.

**B. Basis for the termination of parental rights.**

Although we vacate and remand this case for findings of fact and conclusions of law regarding the children's preferences, we must also consider the father's arguments challenging the basis for the circuit court's decision to terminate parental rights. The father asserts several overlapping assignments of error that we can categorize into three main issues: he challenges the reliability of the mother's drug test results; he challenges the circuit court's factual finding that he knew, or should have known, of the mother's ongoing drug abuse; and he challenges the circuit court's decision to terminate his parental rights on the basis of a failure to protect the children from the mother's drug abuse.[7]

The father focuses much of his appellate brief on challenging the reliability of the mother's drug test results. He argues that Ms. Mebane, the certifying toxicologist from Q-Labs, did not personally conduct the testing of the mother's samples and that the DHHR failed to establish the chain of custody for the samples. We disagree. Ms. Mebane testified to the standard operating procedures used in her lab, including the labeling and handling of specimens. She explained that while lab staff placed the specimens into the testing machines, she was the person who reviewed the data from the machines and issued the resulting reports. She also indicated that her laboratory staff were available to testify. "The preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. Absent abuse of discretion, that decision will not be disturbed on appeal." Syl. Pt. 2, *State v. Davis*, 164

---

[6] Although the father did not raise this issue in his petition for appeal, the error applies equally to him. The disposition order is vacated and remanded with respect to both parents.

[7] In his brief, the father combines several of his assignments of error for purposes of argument. We do the same in this memorandum decision to improve clarity and readability. Moreover, some of the father's assignments of error may be dispensed with easily. This includes assignment of error number one, where the father argues that the final disposition order erroneously stated that an amended petition for abuse and neglect had been filed. The existence of this amended petition is clearly set forth in the circuit clerk's docket sheet that the father provided in his appellate appendix record. In accordance with Rule 6(b) of the Rules of Appellate Procedure, this Court on its own motion obtained the amended abuse and neglect petition. A review of the amended petition shows that it did nothing more than correct the birthdate listed for one of the children. Furthermore, the father admits that his second assignment of error, regarding an alleged lack of notice, is moot. To the extent that this memorandum decision does not expressly discuss any issue raised by either parent, the issue is rejected as lacking merit.

W. Va. 783, 266 S.E.2d 909 (1980). After hearing the evidence and noting the father's objection at the disposition hearing, the circuit court expressly found in the final order that the mother's drug "tests are accurate and followed scientific protocol and standard operating procedures of the lab." We have no basis on which to conclude that this finding was erroneous.

The father also argues that the DHHR failed to prove that he knew, or should have known, that his wife was continuing to abuse prescription drugs during the improvement period. However, the terms of the parents' improvement period clearly stated that the parents were prohibited from using drugs without a prescription. Throughout these proceedings, the mother continued to test positive. These test results were shared in MDT meetings and discussed at court hearings. Despite the lab reports, the father continued to deny that his wife was abusing drugs. He took no action to address the situation or protect the children. Thus, we find no abuse of discretion in the circuit court's factual finding that the father knew, or should have known, of the mother's ongoing drug abuse.

Next, the father contends that his parental rights were terminated on grounds not alleged in the abuse and neglect petition and for which he was not adjudicated as an abusing parent. The petition for abuse and neglect charged the parents with unspecified domestic violence, and that was the basis for their adjudication. However, the disposition order appears to terminate the mother's parental rights for drug abuse and the father's parental rights for failing to protect the children from the mother's drug abuse. As explained below, this issue presents an additional reason to vacate the disposition order.

At the beginning of this case, the MDT and the circuit court considered the parents' circumstances and concluded that restrictions on alcohol and drugs were necessary. The parents agreed to comply with these terms, and the terms were incorporated into the case plan and improvement period. The evidence presented during the disposition hearing proved that the parents did not fully comply with these terms as the mother continued to abuse prescription medications without a prescription, including when two of the children were returned to the home, and the father knew (or should have known) of this abuse. West Virginia Code § 49-4-604(d) provides that there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" when "[t]he abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment" and/or "[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]" *Id.* at §§ 49-4-604(d)(1) and (3).

However, in the disposition order, the circuit court failed to make any findings of fact or conclusions of law linking the prescription drug misuse to the underlying abuse and neglect for which the parents were adjudicated, i.e., their domestic violence. We are left to speculate that the drug abuse was related to the domestic violence, but there is no evidence in the appellate record— and no discussion in the disposition order—to indicate this. The appellate record does not even disclose the nature of the parties' domestic violence. If there is a connection between the domestic violence and the mother's ongoing drug abuse and the father's failure to protect the children from

7

that drug abuse, the circuit court needs to make findings of fact and conclusions of law explaining it. If there is no connection, then the parents' rights to the children cannot be terminated on these grounds unless this conduct is pursued by the filing of an amended abuse and neglect petition. It is well-settled that claims of abuse and/or neglect not encompassed by the allegations in an abuse and neglect petition must be pursued by the filing of an amended petition:

> To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the Department of Health and Human Resource's petition, then pursuant to Rule 19 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* [1997] the circuit court has the inherent authority to compel the Department to amend its petition to encompass the evidence or allegations.

Syl. Pt. 5, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006); *In re Lilith H.*, 231 W. Va. 170, 181-82, 744 S.E.2d 280, 291-92 (2013) (reversing disposition order that terminated parental rights on grounds for which parents were neither charged or adjudicated; ordering filing of amended abuse and neglect petition, if appropriate); *In re T.W.*, 230 W. Va. 172, 181, 737 S.E.2d 69, 78 (2012) (directing that new allegations of abuse be pursued in amended abuse and neglect petition). Accordingly, we vacate the circuit court's disposition order and remand for further proceedings to include, at a minimum, the entry of an amended disposition order addressing this issue.[8]

### IV. Conclusion

For the foregoing reasons, we vacate the circuit court's November 5, 2020, disposition order and remand for further proceedings consistent with this opinion.

**Vacated and Remanded with Directions.**

**ISSUED: November 10, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[8] Although the mother did not raise this issue in her petition for appeal, it applies equally to her. The disposition order is vacated and remanded with respect to both parents.